Chandler v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-120-CR
No. 10-91-121-CR

     JAMES ELLIS CHANDLER,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court Nos. 18,251 & 18,252
                                                                                                    

O P I N I O N
                                                                                                    

      Juries convicted James Chandler in separate trials of aggravated robbery and robbery and
assessed him a life sentence for each offense. His appeals are consolidated for disposition as they
each assert essentially the same complaints. Chandler complains about a "tainted" in-court
identification, the admission of testimony relating to a prior conviction, the admission of
unadjudicated offenses at the punishment stage, the denial of a continuance, and the charge on the
burden of proof. We will remand for new punishment hearings in both causes.
      The grand jury indicted Chandler for the armed robbery of a One Stop Grocery store clerk
that occurred on September 21, 1990, and for the September 25 armed robbery of the clerk of the
Corner Store. Both crimes occurred in Waxahachie. Each indictment also alleged two prior
felony convictions for enhancement: possession of a controlled substance and murder. Chandler
was convicted of robbery for the September 25 offense and aggravated robbery for the September
21 crime. The juries that convicted him assessed a life sentence in each trial.
                                                    IDENTIFICATION
      Kathy DeFore and Betty Wade, the victims of the two robberies, both identified Chandler in
a photo array and in a "live" lineup. Following a suppression hearing, the court later ruled that
the lineup identification was inadmissible. However, DeFore and Wade made an in-court
identification of Chandler as the person who robbed them. Each testified that their in-court
identification was based solely on having observed him during the robbery and was not affected
by either the pretrial photo array or lineup.
      In his first common points, Chandler asserts that the court erred in allowing the robbery
victims to make an in-court identification of him over his objection. He argues that DeFore's and
Wade's identifications were tainted by the inadmissible lineup because, after identifying him in
such a lineup, they would base their in-court identifications on the lineup rather than on an
independent identification of him at the time of the offense. Their descriptions of the robber were
flawed, he says, because they were in a state of excitement during the robberies and because the
robbery episodes only lasted for 30 seconds. He points out that the victims never mentioned the
tear-drop tattoo near his eye and described him as being shorter and thinner than he really is. 
      The State counters these arguments, however, by pointing out that DeFore and Wade
accurately describe Chandler by hair length, glasses, baseball cap, and unshaven appearance, that
they never identified any person other than him as the robber, that they each had adequate time
under good lighting conditions to observe him up close during the offense, and that they identified
him in a photo array only two or three days after the robberies took place.
      A court should consider several factors when determining the admissibility of in-court
identifications when an inadmissible out-of-court identification has occurred: (1) the witness's
prior opportunity to observe the alleged criminal act; (2) whether there is a discrepancy between
any pre-lineup description of the criminal and the defendant's actual description; (3) any
identification of the defendant prior to the lineup by another person; (4) the identification by
picture of the defendant prior to the lineup; (5) failure to identify the defendant on a prior
occasion; and (6) the lapse of time between the alleged act and the lineup identification. United
States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 1940 (1967). The Court in Wade noted the
probability that, once the accused is identified from an inadmissible out-of-court identification, the
identifying witness is unlikely to go back on his word in making an in-court identification. Id.,
388 U.S. at 229, 87 S.Ct. at 1940. However, even if the pretrial identification is inadmissible,
that does not make the in-court identification inadmissible per se. Id. 388 U.S. at 240 n. 32, 87
S.Ct. at 1939 n.32.
      "A defendant who contends on appeal that a trial court erred in allowing an in-court
identification of him by a complaining witness has a difficult and heavy burden to sustain, for
unless it shows by clear and convincing evidence that a complaining witness' in-court identification
of a defendant as the assailant was tainted by improper pre-trial identification procedures and
confrontations, the in-court identification is always admissible." Jackson v. State, 628 S.W.2d
446, 448 (Tex. Crim. App. 1982).       Considering all the evidence, Chandler has failed to meet
his burden of showing by clear and convincing evidence that the in-court identifications were
tainted by improper pre-trial identification procedures. Point one is overruled in each cause.
      Chandler asserts in each of his second points that the court erred in overruling his objection
to evidence of a pretrial photographic identification and in admitting the in-court identifications. 
He argues that the in-court identification was tainted by the photographic identification.
      On the day of the robberies, the victims were shown a photo array of five or six males, but
they could not make an identification of the robber. A few days later, however, the victims picked
Chandler's photo out of a second array of five to six males. Chandler contends the second array
was impermissibly suggestive because his photo stood out as having a different background and
because it obviously appeared to be a jail "mugshot." The State argues, however, that any
differences in the photographs were minimal and that all photographs were of white males of
Chandler's approximate age. 
      A two-step analysis is used to determine the admissibility of an in-court identification based
on a photographic identification. First, the trial court must determine whether the pretrial
procedure is impermissibly suggestive. Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990). 
Second, it must determine from the totality of the circumstances whether the suggestiveness, if
any, leads to a substantial likelihood of irreparable misidentification. Id. Thus, a conviction
based on an in-court identification following a suggestive pretrial photographic identification will
be set aside only if the nature of the photographic identification procedure gives rise to a very
substantial likelihood of irreparable misidentification. Id. at 384. Once an out-of-court procedure
is determined to be impermissibly suggestive, the court is to consider the Wade factors to
determine if this suggestiveness leads to a substantial probability of irreparable misidentification. 
Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 381-82, 34 L.Ed.2d 401 (1972).
      The photographic array that Chandler attacks as impermissibly suggestive contains pictures
of virtually the same size, with the subjects in similar poses, and none with striking differences
in personal appearance, dress or age. The officer presenting the photo array and the victims all
testified that the officer did not attempt to influence the identification of Chandler from the array. 
Based on the evidence, the court could have reasonably found that Chandler's photo and the array
were not so impermissibly suggestive as to lead to a very substantial likelihood of an in-court
misidentification. Accordingly, we cannot say that the court abused its discretion when it admitted
the in-court identifications. Both second points are overruled.
UNADJUDICATED ACTS
      The indictment charging Chandler with the September 25 robbery went to trial first. Betty
Wade, the victim in the September 25 offense, identified Chandler as the robber during the guilt-innocence stage. Kathy DeFore, the victim of the September 21 robbery, testified over defense
objections during the punishment phase that Chandler also robbed her on September 21, describing
the details of the prior robbery. Of course, Chandler's guilt for the September 21 robbery had not
yet been adjudicated. Over Chandler's objection, the court also allowed Wanda Thompson, whom
Chandler had robbed in Anderson County on September 24, 1990, to identify him as the robber
and to relate the details of that offense. Thompson said she was afraid that Chandler was going
to kill her in the September 24 robbery. The Anderson County offense had not yet been tried and
thus also was unadjudicated. 
      In the separate trial for the September 21 robbery, Kathy DeFore testified on guilt that
Chandler robbed her on that date. Over a defense objection, the court also allowed Betty Wade
to testify during the punishment phase that Chandler had robbed her on September 25. Wade
described the details of that offense. Chandler's conviction for the September 25 robbery was
being appealed when the second case was tried, and thus his guilt for the September 25 offense
was not yet finally adjudicated.
      In common third points, Chandler contends the court erred in admitting evidence of
unadjudicated offenses during punishment. Unadjudicated acts of misconduct are not admissible
during the punishment phase of non-capital offenses. Grunsfeld v. State, No. 1037-91, slip op.
at 2 (Tex. Crim. App. October 28, 1992); Blackwell v. State, 818 S.W.2d 134 (Tex. App.—Waco
1992), aff'd, No. 1037-91 (Tex. Crim. App. October 28, 1992). Therefore, the court erred when
it allowed DeFore and Thompson to testify in the trial of the September 25 robbery about two
prior robberies, both of which were then unadjudicated acts of misconduct on Chandler's part.
      Wade, the victim in the September 25 robbery, testified on punishment in the second trial for
the September 21 robbery about the unadjudicated September 25 offense. This was also error. 
See id. 
      Applying the criteria for determining whether the errors were harmless, we cannot conclude
beyond a reasonable doubt that the errors during the punishment phase of both causes did not
contribute to Chandler's punishment. See Tex. R. App. P. 81(b)(2); Harris v. State, 790 S.W.2d
568, 587 (Tex. Crim. App. 1989). Although the jury had before it evidence that Chandler had
committed two prior felonies—possession of a controlled substance and murder—one simply
cannot conclude beyond a reasonable doubt that the jury in determining punishment would have
ignored and been unaffected by evidence he had been recently involved in a robbery spree.
      We sustain the third point in both causes. Chandler also complains in his fourth points that
the court improperly admitted State's exhibit number four, a pen packet, during the punishment
stage over his objection that it contained references to non-final extraneous offenses. These
complaints are not reached because of our disposition of the third points.
REFUSAL OF CONTINUANCES
      In a fifth point in each cause, Chandler complains that the court erred when it denied his
motion for a continuance and required him to proceed to trial without a material witness who was
unavailable. "The granting or denial of a motion for continuance is vested in the sound discretion
of the trial court, and reversal of a judgment is justified only when it is shown [that] the trial court
has abused its discretion." Hernandez v. State, 643 S.W.2d 397, 399 (Tex. Crim. App. 1983). 
Apparently, the unavailable witness would have testified that another individual matched
Chandler's physical description. The court did not abuse its discretion when it refused to grant
a continuance to find and produce such a witness. Point five is overruled in both causes.
      In his sixth points, Chandler complains that the court erred in denying his motion for a
continuance and requiring him to proceed to trial the day after the court ruled on his pretrial
discovery motion. We overrule these points for the reasons given in connection with point five. 
BURDEN OF PROOF
       Chandler's final complaint is that the court failed to instruct the jury on the burden of proof. 
However, the record reflects that the court included the standard instruction on the burden of 
proof and properly applied that burden to the facts in each charge on guilt-innocence. We overrule
point seven in each cause.
DISPOSITION
      Finding no error during the guilt stage of either cause, but concluding that reversible error
occurred during the punishment portion of each proceeding, we affirm each conviction but remand
for a new punishment hearing in both causes. See Tex. Code Crim. Proc. Ann. art. 44.29(b)
(Vernon Supp. 1993). 
 
                                                                                     BOB L. THOMAS
                                                                                     Chief Justice

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Both causes remanded for new punishment
      hearings
Opinion delivered and filed February 10, 1993
Do not publish